Mike Rodenbaugh
RODENBAUGH LAW
California Bar No. 179059
548 Market Street
San Francisco, CA  94104
(415) 738-8087

Erin Dennis Vivion
RODENBAUGH LAW
California Bar No. 262599
7740 North Fresno Street, Suite 104
Fresno, CA  93720
(415) 738-8087

Brett E. Lewis, Esq.
LEWIS & HAND LLP
45 Main Street, Suite 608
Brooklyn, New York  11201
(718) 243-9323
(pending admission pro hac vice)

Attorneys for Plaintiff WebQuest Inc.

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WEBQUEST.COM, INC., a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HAYWARD INDUSTRIES, INC., a New Jersey Corporation,<br><br>Defendant. | Case No. |

**COMPLAINT AND DEMAND FOR
JURY TRIAL**

Plaintiff, WebQuest.com, Inc., ("WebQuest"), by its attorneys, Lewis & Hand LLP and Rodenbaugh Law, for its Complaint, allege:

## NATURE OF ACTION

This action seeks a declaratory judgment that WebQuest is the rightful registered name holder or registrant of the domain names <Hayward.com> and <wwwHayward.com> (hereinafter "the Domain Names"), and seeks to bar their transfer to Hayward Industries, Inc. a New Jersey Corporation ("Hayward Industries").

## JURISDICTION

1. Pursuant to 28 U.S.C. §§ 2201(a) and 2202, WebQuest seeks a declaration and judgment regarding its rights and obligations in an actual controversy within this Court's jurisdiction between WebQuest and Hayward Industries concerning WebQuest's rights in and to the Domain Names.  Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, and 28 U.S.C. § 1338(a), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark laws of the United States, as the Defendant alleges that Plaintiff has infringed Defendant's trademark via registration and use of the Domain Names.  Moreover, there is complete diversity of the parties insofar as Plaintiff is a citizen of California and Defendant is a citizen of New Jersey, and the amount in controversy well exceeds $75,000; thus this Court has original jurisdiction pursuant to 28 U.S.C. §1332.

2. Hayward Industries consented to the jurisdiction of this Court in connection with the filing of an administrative complaint with the World Intellectual Property Organization ("WIPO"), in <u>Hayward Industries, Inc. v. WebQuest.com, Inc.</u>, Case No. D2009-1493 (WIPO, Jan. 27, 2010) (the "Administrative Action"), conducted under the Uniform Domain Name Dispute Resolution Policy (the "UDRP").

3. WebQuest was served by WIPO with a copy of the decision ordering transfer of the Domain Name on February 9, 2010 (the "Decision Date").

## THE PARTIES

4. Plaintiff WebQuest is a California corporation with its principal place of business in Modesto, California.

5. WebQuest is a domain name investment company, with a portfolio of thousands of descriptive, generic, dictionary word, and keyword domain names, such as <automakers.com>, <automotivetires.com>, <dentalproblems.com>, <boatparts.com>, and <reptiles.com>.

6. WebQuest also owns numerous geographical domain names ("geo domains"), including the domain names for such Northern California cities as <CastroValley.com>, <SanLeandro.com>, <SanRamon.com>, <Pleasanton.com>, <UnionCity.com>, and <Hayward.com>.

7. Upon information and belief, Hayward Industries is a New Jersey corporation with its principal place of business at 620 Division Street, Elizabeth, NJ 07201.

8. Upon information and belief, Hayward Industries manufactures and sells swimming pool controls, filters, heaters, pumps, valves, and automatic pool cleaners, as well as other related products from its headquarters in New Jersey.

## FACTUAL BACKGROUND

### Introduction

9. Domain Names are the digital real estate of the Internet age. A prime address on the Internet can be every bit as valuable as an address on Rodeo Drive. Savvy investors

realized early on that the value of finite "dot com" addresses would only increase as the Internet grew in popularity. These entrepreneurs developed many of the Web sites and businesses that became the backbone of the Internet. WebQuest is a prominent and respected domain name investment and development company.

10. Just as claim jumpers sought to rob prospectors of the fruits of their labors in the mid-1800s, domain name investors find themselves under legal assault by modern day claim jumpers. It has become all too common for corporate trademark holders to file abusive proceedings under the auspices of the UDRP -- with the intent of hijacking domain names from their rightful owner.

11. Some UDRP panelists seem all too willing to go along with tortured logic and fabricated evidence, raising serious doubts about fairness and due process in the UDRP's administrative system. The end result is that descriptive, dictionary word domain names and the names of cities, such as Hayward, California, are increasingly the subject of abusive administrative proceedings. Such filings, and decisions like the one underlying this action, are having a chilling effect on domain name investment and innovation. In the absence of a stable and predictable body of governing rules and decisions, the market for descriptive dictionary or geo domain names is jeopardized.

12. The fiction that an investor must use a domain name in order to have legitimate rights to it has no place in a capitalist society. There is no other investment asset that can be taken from its owner, without compensation, for the sole reason that it is not *used* or *developed*. It would be ludicrous to suggest that the owner of a plot of land in Amador County should forfeit her rights to the plot because she failed to plant a vineyard, but that is exactly what happened to Plaintiff, and is happening all too often. The system is broken.

13. Some UDRP panelists are finding new and innovative ways to strip legitimate parties of their rights. In the UDRP proceeding underlying this action, WIPO panelists found that WebQuest was a bad faith actor based on a combination of fabricated evidence, tortured logic, and a speculative and unsubstantiated domain name valuation. It is shocking and appalling that WIPO panelists, without any expertise in domain name valuation, would strip a domain owner of a six figure asset because they deemed its auction reserve to be too high.

### The Auction

14. In November 2009, due to economic reasons, WebQuest had to break up its portfolio of Bay Area city domains. WebQuest placed the <Hayward.com> domain name for auction at a domain industry conference. The listed reserve price was $100,000.

15. WebQuest came to the price of $100,000 for the <Hayward.com> domain based on previous geo domain sales. Other city names owned by third parties, such as <Daytona.com> and <BoiseIdaho.com>, sold for $150,000 (in August 2008) and $175,000 (in September 2007), respectively. WebQuest had previously sold <Bellevue.com> for $150,000 in May 2008, <SantaRosa.com> for $75,000 in September 2008, and <Oceanside.com> for $85,000 in November 2008.

16. Geo names are valued as some of the best domain names for city, state and regional travel and destination sites. Six figure sales are common.

### The Registration

17. WebQuest purchased the domain name <Hayward.com> in good faith from its prior owner, Hayward & Associates, Inc., a Georgia-based IT company, on or about July 31, 2006 for $20,000. WebQuest had previously registered the <wwwHayward.com> domain name on August 14, 2004.

18. WebQuest also registered a number of other Hayward, California-specific domain names between 2005 and 2007, including haywardhomesforsale.com (December 31, 2005), haywardclassifieds.com (January 3, 2006), haywardclassified.com (July 18, 2006), haywardchat.com (October 2, 2006), and haywardcatering.com (June 2, 2007).

19. WebQuest similarly registered city-specific domain names for the other Bay Area city domain names in its portfolio. For example, WebQuest is the registrant of the following domain names: <sanleandroclassifieds.com> (July 18, 2006), <sanleandrohomesforsale.com> (December 31, 2005), <sanramonclassifieds.com> (December 31, 2006), <sanramonjobs.com> (January 2, 2006), <fresnochat.com> (August 26, 2005), and <fresnoclassifieds.com> (February 7, 2008).

20. The registration and use of generic geo domains is widely recognized as a good faith use.

21. At the time that WebQuest registered the Domain Names, it had never heard of Hayward Industries. WebQuest did not register the Domain Names with the intent to sell them to Hayward Industries, and WebQuest never offered to sell the Domain Names to Hayward Industries.

22. Nor did WebQuest intend to divert customers searching for Hayward Industries' pool filters, heaters, pumps or related equipment to the Web sites located at www.Hayward.com or www.wwwHayward.com (the "Hayward sites"). Upon information and belief, the Hayward Sites did not display advertisements for pool filters, heaters, pumps or related equipment.

### The Demand Letter

23. Immediately after WebQuest acquired the <Hayward.com> domain name on July 31, 2006, Hayward Industries sent WebQuest a cease and desist letter, dated August 1, 2006,

accusing WebQuest of willful infringement and dilution of Hayward's trademarks, and demanding that WebQuest transfer <Hayward.com> to Hayward Industries.

24. By letter dated August 4, 2006, WebQuest denied the allegations. In that letter, WebQuest informed Hayward Industries that it was the registrant of a portfolio of Northern California geo domain names, including <Hayward.com>, <CastroValley.com>, <SanLeandro.com>, <SanRamon.com>, and <Pleasanton.com>. WebQuest's intent in acquiring the <Hayward.com> domain was for its geographic significance as a city in the Bay Area of Northern California.

25. From that date until November 3, 2009, the date on which Hayward Industries commenced the Administrative Action, WebQuest received no correspondence from Hayward Industries. During the three years and three months that passed between WebQuest's August 4, 2006 letter and Hayward Industries' filing of the Administrative Action, Hayward Industries did not complain a single time about WebQuest's registration or use of the Domain Names.

<u>The Use</u>

26. After registering the Domain Names, WebQuest used them in connection with pay-per-click advertising. A domain name monetization company, Domain Sponsor, supplied the content for the Hayward Sites. Pay-per-click advertising is a widely accepted, good faith practice, when used in connection with geographically descriptive names.

27. On or about August 1, 2006, one day after it acquired <Hayward.com> and the same day that it was placed on notice of Hayward Industries' putative trademark rights, WebQuest turned off the "auto-optimization" feature for the Domain Names with Domain Sponsor. WebQuest disabled auto-optimization in an effort to *prevent* competitive links or advertisements from being displayed on the Hayward Sites.

28. "Auto-optimization" is a feature offered by domain name monetization companies to maximize pay-per-click revenue by serving ads that are contextually relevant to the content that Internet users are searching for, based on behavioral patterns. In turning off auto-optimization, WebQuest assured not only that advertisements for Hayward Industries and pool-related products would *not* be displayed in connection with the Hayward Sites, but also that no optimized advertisements for any other individual, entity, lake or town, including the city of Hayward, would be displayed. The advertised links posted in connection with the Hayward Sites were simply generic default links to a broad category of goods and services.

29. As a result of turning off auto-optimization, the <Hayward.com> domain name generated roughly $20 per month in pay-per-click revenue – or roughly $240 per year, for the past three years – on a $20,000 investment.

30. Although Hayward Industries has not provided WebQuest with any evidence that competitive links were *displayed* in connection with the Hayward Sites, Hayward Industries, nevertheless, contends that *search results*, which were generated *in response to Hayward Industries' own search requests* entered into the embedded Google search box on the Hayward Sites, are evidence of WebQuest's bad faith intent to profit off of its various HAYWARD® formative marks. Hayward Industries simply entered terms such as "Hayward," "pool filter," and "pool hose" into the search box. Google supplied the search results which were displayed on the Hayward sites.

31. Upon information and belief, most, if not all, pay-per-click pages on the Internet contain a Google or other search engine search box. Web site owners have no control over the results generated in response to a user-generated search request in a Google search box.

32. When a pay-per-click site is associated with a legitimate, descriptive domain name, which displays no trademark-related advertisements, it confounds logic and reason to ascribe a bad faith intent to the site owner based upon the manually entered intentional search requests of a third party – in this case a trademark holder looking to generate evidence of competitive listings to support an administrative virtual property grab. Had Hayward Industries been in the business of selling pumpkin pies, it could just as easily have typed pumpkin pie into the search box and generated pumpkin-related links. If it sold feather dusters, it could have generated advertisements and argued that WebQuest "deliberately" targeted the feather duster market with competitive links. Any trademark holder of any common dictionary or geographically descriptive word could manufacture so-called evidence of bad faith, simply by performing a Google search and submitting the search results as "evidence" of bad faith. This cannot be the result intended by Congress when it enacted the Anti-Cybersquatting Consumer Protection Act ("ACPA") to address abusive cybersquatting. Nor could it have been the intent of ICANN, which at the time was closely related to the US government, in enacting the UDRP.

<u>The Weak Mark</u>

33. Among other uses, "Hayward" is the name of a city in California, the name of a lake, a school name, proper name, airport name, and a name used by numerous companies as part of their trademarks.

34. There are 22 active trademark registrations, which include the word HAYWARD, including: HAYWARD® for women's handbags; HAYWARD FAST FLOOR® for building materials and computer software; HAYWARD® for jewelry; HAYWARD® for a building supply store; HE HAYWARD ELECTRIC® for maintenance services in the area of industrial and commercial electrical systems; and HAYWARD® for

smoking tobacco and cigarettes. Any of these companies could have a legitimate right to own the <Hayward.com> domain name.

35. Hayward is a common surname, with roughly 30,000 Haywards in the United States, alone. Any of those persons could have a legitimate right to own the <Hayward.com> domain name.

36. Hayward Industrial does not own and cannot rightfully claim exclusive rights to use of the word HAYWARD, as used in a domain name or otherwise.

The Administrative Proceeding

37. As stated above, Hayward Industries filed a Complaint with WIPO on or about - November 3, 2009. WIPO formally notified WebQuest of the Complaint, and proceedings commenced on November 18, 2009. WebQuest filed a Response on December 8, 2009, and a Decision was issued on January 27, 2010.

38. The Decision, which was served on the parties on February 9, 2010, ordered that the Domain Names be transferred to Hayward Industries. Under the UDRP, a losing party has ten business days to stay an administrative transfer order by filing a Complaint in a Court located in the designated jurisdiction – in this case, the United States District Court for the Eastern District of California.

39. WebQuest timely filed this action in the appropriate jurisdiction. Accordingly, the Domain Names may not be transferred, pending the resolution of this action.

## **CLAIM FOR DECLARATORY RELIEF**

40. WebQuest realleges paragraphs 1-39 of this Complaint.

41. WebQuest rightfully registered the Domain Names in good faith, and with no knowledge of, or intent to sell them to, Hayward Industries. WebQuest had no intention of diverting

any traffic from Hayward Industries' Web sites, nor would customers searching for Hayward Industries find any references to Hayward Industries or competing products on the Hayward sites.

42. In registering the Domain Names, WebQuest provided accurate contact information.

43. Hayward is a common surname, with roughly 30,000 Haywards in the United States, alone, and a commonly used business name. Hayward is also the name of a school, a lake, and most notably a city in Northern California. As such, Hayward Industries' putative rights in the HAYWARD® mark are far from exclusive. They are extremely weak, and only relevant to pool supplies.

44. Prior to the commencement of the Administrative Action, WebQuest used the Domain Names as geographic identifiers in connection with pay-per-click advertising. Pay-per-click advertising has been widely recognized as a bona fide use for geographically descriptive domain names. Upon information and belief, pay-per-click advertising is Google's main source of revenue.

45. The presence of a Google search box on a parked pay-per-click page in no way turns a bona fide good faith use into a bad faith one. The results delivered by a search box are driven by the user and by Google. The same search results appear that would appear if the user was searching directly on Google. Bad faith intent cannot be imputed to a registrant where, as here, a trademark holder fabricates evidence of bad faith by seeding a search engine box with competitive keyword terms.

46. Offering a geographically descriptive domain name for sale at an auction is in no way indicative of bad faith.

47. Webquest believed and had reasonable grounds to believe, based on the secondary market for geographically descriptive domain names, as well as prior legal decisions and

decisions under the Policy, that the registration and use of the Domain Names, as geo domains, was lawful.

48. Hayward Industries filed the Administrative Action, contending that WebQuest registered and used the Domain Names in bad faith.

49. The Policy provides that administrative panel decisions may be stayed, and that subject domain name disputes may be resolved in a court of competent jurisdiction. The courts have held that such review is to be made *de novo*.

50. A justiciable controversy exists between WebQuest and Hayward Industries.

51. To resolve this actual controversy, WebQuest seeks a declaration and judgment that its registration and use of the Domain Names is a good faith use, and a cancellation of the transfer order of the panel in the Administrative Action.

## **PRAYER FOR RELIEF**

WHEREFORE, WebQuest prays for judgment as follows:

a. a declaration that WebQuest is the rightful registrant of the Domain Names, and a cancellation of the transfer order in the Administrative Action;

b. an award of attorney fees; and

c. granting such other and further relief as the Court may deem just and proper.

Dated: Fresno, California
February 19, 2010

                                      RODENBAUGH LAW

                                      By: s/ Mike Rodenbaugh

                                      Mike Rodenbaugh, Esq.
                                      California Bar No. 179059
                                      548 Market Street
                                      San Francisco, CA  94104
                                      (415) 738-8087

1
2
3
4
5
6
7
8
9
10
11
12

        By: s/ Erin Dennis Vivion
        Erin Dennis Vivion, Esq.
        California Bar No. 262599
        7740 North Fresno Street
        Suite 104
        Fresno, CA  93720
        (415) 738-8087

        LEWIS & HAND LLP

        By: s/ Brett E. Lewis
        Brett E. Lewis, Esq.
        45 Main Street
        Suite 608
        Brooklyn, New York  11201
        (718) 243-9323
        (pending admission pro hac vice)

        Attorneys for Plaintiff WebQuest Inc.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28