Don A. Hernandez, Esq. (SBN 125119)
HERNANDEZ SCHAEDEL & ASSOCIATES, LLP
2 North Lake Avenue, Suite 930
Pasadena, California 91101
Telephone: (626) 440-0022
Facsimile: (626) 628-1725
E-mail address: dhernandez@hernlaw.com

Scott S. Christie
Mark H. Anania
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(Pending admission pro hac vice)

Attorneys for Defendant and Counterclaimant
HAYWARD INDUSTRIES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEBQUEST.COM, INC., a California Corporation,<br><br>               Plaintiff,<br><br>        vs.<br><br>HAYWARD INDUSTRIES, INC., a New Jersey Corporation,<br><br>             Defendant. | **Case No. 1:10-cv-00306-OWW-GSA**<br><br>[Assigned to Hon. Oliver W. Wanger]<br><br>**COUNTERCLAIMS AND JURY DEMAND OF DEFENDANT HAYWARD INDUSTRIES, INC.** |
| HAYWARD INDUSTRIES, INC., a New Jersey Corporation,<br><br>             Counterclaimant,<br><br>        vs.<br><br>WEBQUEST.COM, INC., a California Corporation,<br><br>             Counter-Defendant. | |

/ / /

/ / /

1

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

Defendant/Counterclaimant Hayward Industries, Inc. ("Hayward"), through its attorneys Hernandez Schaedel & Associates, LLP and McCarter & English, LLP, complains and counterclaims against Plaintiff/Counterclaim Defendant WebQuest.com, Inc. ("WebQuest") as follows:

## JURISDICTION

1.    To the extent this Court finds it has subject matter jurisdiction over the claims brought by WebQuest, this Court likewise has subject matter jurisdiction over these Counterclaims arising under the Lanham Act, state law and common law pursuant to one or more of 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201 and 2202.

2.    This Court has personal jurisdiction over WebQuest because WebQuest is domiciled in and maintains its principal place of business in this District, and because WebQuest filed in this District the Complaint to which these Counterclaims correspond.

3.    To the extent this Court finds it has personal and subject matter jurisdiction over the claims brought by WebQuest, venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

## PARTIES

4.    Hayward is, and at all times material has been, a corporation organized under the laws of New Jersey, with a principal place of business located at 620 Division Street, Elizabeth, New Jersey 07201.

5.    WebQuest is a corporation organized and existing under the laws of California, with a principal place of business located in Modesto, California.

## FACTS COMMON TO ALL COUNTERCLAIMS
### The Strength of the HAYWARD® Mark

6.    Hayward manufactures and sells a full line of state-of-the-art swimming pool controls, filters, heaters, pumps, valves, and automatic pool cleaners, as well as other related products, worldwide under a variety of trademarks including HAYWARD®.

2

7.     Hayward and its subsidiaries have continuously used the trademark HAYWARD® for swimming pool products sold in interstate commerce throughout the United States since June 1956.

8.     HAYWARD® has been the registered trademark of Hayward in the United States since February 8, 1977 for "metal valves, fittings, pipe and accessories for swimming pools" in international class 6 (pipes and tubes of metal); "pumps and water circulation systems for swimming pools" in international class 7 (machines and machine tools); "plumbing fixtures, filters, strainers and electrical lights, components, and fittings therefore for swimming pools" in international class 11 (apparatus for lighting); and "plastic valves, fittings, pipe and accessories for swimming pools" in international class 20 (plastic goods not included in other classes) as reflected in U.S. Registration No. 1,058,211, attached hereto as **Exhibit A**.

9.     Hayward's federal registration for the HAYWARD® mark is *prima facie* evidence that the HAYWARD® mark has acquired distinctiveness.

10.     The HAYWARD® mark has achieved the status of an incontestable mark.

11.     Hayward's federal registration serves as conclusive evidence of the validity of the HAYWARD® mark.

12.     Hayward's federal registration also serves as conclusive evidence of Hayward's ownership of the HAYWARD® mark.

13.     Hayward's federal registration furthermore serves as conclusive evidence of Hayward's exclusive right to use the HAYWARD® mark in commerce in connection with swimming pool products.

14.     Hayward's federal registration likewise serves as constructive notice of Hayward's claim of ownership to the HAYWARD® mark and registration for swimming pool products.

15.     In addition to its federal trademark registration, Hayward has registered numerous domain names incorporating the HAYWARD® mark, including, without

3

limitation, <haywardindustries.com>, <haywardnet.com>, <haywardproducts.com>, <haywardpoolproducts.com>,  <hayward-pool-products.com>, <hayward-poolproducts.com>, <haywardpoolsupplies.com>, <haywardpoolequipment.com>, <haywardparts.com>, <hayward-parts.com>, <haywardpoolparts.com>, <haywardswimmingpools.com>, <haywardpools.com>, <hayward-pools.com>, <haywardpool.com>, <hayward-pool.com>, <haywardheaters.com>, <haywardpoolheaters.com>, <haywardpoolheater.com>, <hayward-pool-heater.com>, <haywardheatpumps.com>, <haywardcleaners.com>, <haywardpoolcleaners.com>, <hayward-pool-cleaners.com>, <haywardpoolcleaner.com>, <haywardpumps.com>, <haywardpoolpump.com>, <hayward-pool-pump.com> , <haywardvalve.com>, <haywardfilters.com>, <haywardsandfilters.com>, <haywardpoolfilters.com>, <haywardfilterparts.com> and <haywardfilterbags.com>.

16.     Hayward uses the domain name <haywardnet.com> for the uniform resource locator ("URL") of its primary company website www.haywardnet.com devoted to advertising and promoting the swimming pool controls, filters, heaters, pumps, valves, automatic pool cleaners, and related products that the company manufactures and sells.

17.     Hayward has expended substantial effort for decades and tens of millions of dollars advertising and promoting its products under the HAYWARD® mark.

18.     Hayward has sold billions of dollars worth of swimming pool and related products under its HAYWARD® mark in the United States.

19.     As a result of such extensive advertising and sales, the HAYWARD® mark has become famous in the United States and represents extraordinarily valuable goodwill.

**Domain Names Identical and Confusingly Similar to the HAYWARD® Mark**

20.     The domain name <wwwHayward.com> wholly incorporates the HAYWARD® mark adding only the generic top level domain ("gTLD") ".com" and the prefix "www."

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

21.     The domain name <Hayward.com> wholly incorporates the HAYWARD® mark adding only the gTLD ".com."

22.     The domain name <wwwHayward.com> is identical to the HAYWARD® mark.

23.     The domain name <Hayward.com> is identical to the HAYWARD® mark.

24.     Each of the domain names <wwwHayward.com> and <Hayward.com> is confusingly similar to the HAYWARD® mark.

25.     Each of the domain names <wwwHayward.com> and <Hayward.com> likely will cause dilution of the HAYWARD® mark.

**WebQuest Has No Rights to the Term "Hayward"**

26.     WebQuest has never been known or identified by "Hayward."

27.     WebQuest has never been known or identified by the domain name <wwwHayward.com>.

28.     WebQuest has never been known or identified by the domain name <Hayward.com>.

29.     WebQuest has never owned a registered trademark incorporating the term "Hayward."

30.     Upon information and belief, WebQuest has never possessed any trademark rights in a trademark incorporating the term "Hayward."

31.     Upon information and belief, WebQuest has never possessed any trademark rights in a trademark incorporating any term confusingly similar to "Hayward."

32.     Upon information and belief, WebQuest has never possessed any trademark rights in the domain name <wwwHayward.com>.

33.      Upon information and belief, WebQuest has never possessed any trademark rights in the domain name <Hayward.com>.

5

1

## **WebQuest's Improper Registration of the Domain Names**

2       34.    Upon information and belief, WebQuest registered the domain name

3   <wwwHayward.com> on August 13, 2004.

4       35.    Upon information and belief, WebQuest registered the domain name

5   <Hayward.com> on or about July 31, 2006.

6       36.    WebQuest is the current registrant of the domain names

7   <wwwHayward.com> and <Hayward.com>.

8       37.    WebQuest has continuously owned and controlled the domain names

9   <wwwHayward.com> and <Hayward.com> from the dates WebQuest initially

10  registered these domain names to the present.

11      38.    Hayward has never licensed or otherwise authorized WebQuest to use the

12  HAYWARD® mark.

13      39.    Hayward has never authorized WebQuest to register either the domain

14  name <wwwHayward.com> or the domain name <Hayward.com>.

15      40.    WebQuest registered each of the domain names <wwwHayward.com>

16  and <Hayward.com> after Hayward had obtained federal registration of its

17  HAYWARD® mark.

18      41.    WebQuest registered each of the domain names <wwwHayward.com>

19  and <Hayward.com> with actual knowledge of the HAYWARD® mark.

20      42.    WebQuest registered each of the domain names <wwwHayward.com>

21  and <Hayward.com> with constructive knowledge of the HAYWARD® mark.

22      43.    WebQuest registered the domain names <wwwHayward.com> and

23  <Hayward.com> with the bad faith intent to profit from them.

24      44.    Indeed, WebQuest's sole purpose in acquiring the domain name

25  <Hayward.com> was to disrupt the business of Hayward.

26      45.    WebQuest is not the original registrant of the domain name

27  <Hayward.com>.

28

6

46.     On or about July 26, 1995, the domain name <Hayward.com> was initially registered by Hayward & Associates, Inc. ("Hayward & Associates"), a Georgia corporation engaged in various aspects of the information technology industry.

47.     In a letter dated June 26, 2006, Hayward & Associates, informed Hayward that it had been "approached by two separate parties interested in purchasing Hayward.com" and that Hayward & Associates was "certain that either of these potential buyers will purposefully pursue technological means to direct 'Hayward' traffic to their web site away from Hayward Industries."  A true and correct copy of this letter is attached as **Exhibit B**.

48.      WebQuest acquired the rights to the domain name <Hayward.com> from Hayward & Associates on or about July 31, 2006.

49.     Upon information and belief, WebQuest paid Hayward & Associates $20,000 in return for the domain name <Hayward.com>.

50.     As WebQuest's post-registration use of the domain name <Hayward.com> demonstrates, WebQuest surely was one of the two potential buyers referenced by Hayward & Associates who sought to acquire the domain name <Hayward.com> with the intent of diverting and misdirecting Hayward's customers.

## WebQuest Has Used False and Misleading Registry Information for <Hayward.com>

51.     Upon information and belief, Hayward & Associates did not assign its rights in the Hayward[SM] mark to WebQuest through its sale of the domain name <Hayward.com>.

52.     Records of domain name registry are accessible through a public database (the "Whois Database").  The Whois Database record for the domain name <Hayward.com> (the "<Hayward.com> Whois Database Record") identifies July 26, 1995 as WebQuest's date of registration of this domain name.  A true and correct copy of the <Hayward.com> Whois Database Record is attached hereto as **Exhibit C**.

7

53.    WebQuest failed to revise the <Hayward.com> Whois Database Record to accurately indicate the date that it registered the domain name <Hayward.com>.

54.    WebQuest's failure to revise the <Hayward.com> Whois Database Record in this manner created the false and misleading impression that WebQuest registered the domain name <Hayward.com> on July 26, 1995.

55.    In the arbitration matter styled <u>Sidestep, Inc. v. WebQuest.com, Inc.</u>, Case No. D2007-0549, conducted under the Uniform Domain Name Dispute Resolution Policy ("UDRP") before the World Intellectual Property Organization ("WIPO"), WebQuest was found to have registered the domain name <sidestep.com> in bad faith in part because it failed to modify the information in the Whois Database record for this domain name to reflect the date that it registered the domain name.  A true and correct copy of the decision in this matter is attached hereto as **Exhibit D**.

### **WebQuest's Improper Use of the Domain Names**

56.    WebQuest contended that it registered the domain names <wwwHayward.com> and <Hayward.com> for use in URLs for websites devoted to Hayward, California.

57.    WebQuest further contended that these websites devoted to Hayward, California would be part of its network of city-specific websites and similar to those it controlled for other California cities, namely: www.CastroValley.com, www.SanLeandro.com, www.SanRamon.com and www.Pleasanton.com.

58.    Copies of the main page of the websites www.CastroValley.com, www.SanLeandro.com, www.SanRamon.com and www.Pleasanton.com on October 30, 2009 are attached as **Exhibit E**.

59.    On October 30, 2009, the main page of the websites www.CastroValley.com, www.SanLeandro.com, www.SanRamon.com and www.Pleasanton.com each displayed hyperlinks purporting primarily to provide information specific to their correspondingly-named cities in California.

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

60.    On October 30, 2009, neither the main page of the website www.wwwHayward.com nor the main page of the website www.Hayward.com displayed hyperlinks purporting primarily to provide information specific to Hayward, California.

61.    For the entire period of time that WebQuest has owned the domain names <wwwHayward.com> and <Hayward.com>, neither the main page of the website www.wwwHayward.com nor the main page of the website www.Hayward.com has ever displayed hyperlinks purporting primarily to provide information specific to Hayward, California.

62.    WebQuest never developed the websites www.wwwHayward.com and www.Hayward.com to be part of a network of city-specific websites devoted to Hayward, California.

63.    Instead, the only use WebQuest made of the websites www.wwwHayward.com and www.Hayward.com for the entire period of time that it owned the domain names <wwwHayward.com> and <Hayward.com>, was as pay-per-click ("PPC") websites.

64.    A PPC website is a website composed of hyperlinks leading to the websites of advertisers.  A PPC website generates revenue from an advertiser each time a visitor to the website clicks on that advertiser's hyperlink.

65.    At times during the period that WebQuest has owned the domain names <wwwHayward.com> and <Hayward.com>, the main page of www.wwwHayward.com and www.Hayward.com displayed hyperlinks to the websites of advertisers selling swimming pool products, including swimming pool products of Hayward's competitors ("Predominant Swimming-Pool-Product Main Page").

66.    A copy of the main page of the website www.wwwHayward.com on November 20, 2006 is attached as **Exhibit F**.

67.    On November 20, 2006, the main page of the website www.wwwHayward.com was a Predominant Swimming-Pool-Product Main Page.

9

68. A copy of the main page of the website www.Hayward.com on February 26, 2007 is attached as **Exhibit G**.

69. On February 26, 2007, the main page of the website www.Hayward.com was a Predominant Swimming-Pool-Product Main Page.

70. At other times during the period that WebQuest has owned the domain names <wwwHayward.com> and <Hayward.com>, the main page of the PPC websites www.wwwHayward.com and www.Hayward.com did not predominantly display hyperlinks to the websites of advertisers selling swimming pool products ("Non-Predominant Swimming-Pool-Product Main Page").

71. Nevertheless, each time a visitor to the website www.wwwHayward.com or the website www.Hayward.com with a Non-Predominant Swimming-Pool-Product Main Page conducted a keyword search on this main page for "Hayward" or a swimming pool product sold by Hayward, the visitor was presented with a web page that predominantly displayed hyperlinks to the websites of advertisers selling swimming pool products, including swimming pool products of Hayward's competitors.

72. A copy of the main page of the website www.Hayward.com on September 11, 2009 is attached as **Exhibit H**.

73. On September 11, 2009 , the main page of the website www.Hayward.com was a Non-Predominant Swimming-Pool-Product Main Page.

74. However, a keyword search for "Hayward" on the main page for the website www.Hayward.com on September 11, 2009, yielded a web page that predominantly displayed hyperlinks to the websites of advertisers selling swimming pool products, including swimming pool products of Hayward's competitors.  A copy of the web page presented on that date in response to conducting a keyword search for "Hayward" is attached as **Exhibit I**.

75. Likewise, a keyword search for "pool pump" on the main page for the website www.Hayward.com on October 30, 2009, yielded a web page that

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

predominantly displayed hyperlinks to the websites of advertisers selling swimming pool products, including swimming pool products of Hayward's competitors. A copy of the web page presented on that date in response to conducting a keyword search for "pool pump" is attached as **Exhibit J**.

76. Furthermore, a keyword search for "pool filter" on the main page for the website www.Hayward.com on November 2, 2009, yielded a web page that predominantly displayed hyperlinks to the websites of advertisers selling swimming pool products, including swimming pool products of Hayward's competitors. A copy of the web page presented on that date in response to conducting a keyword search for "pool filter" is attached as **Exhibit K**.

77. There were times during the period that WebQuest has owned the domain name <wwwHayward.com> that the URL www.wwwHayward.com did not resolve to an active website.

78. Upon information and belief, there were times during the period that WebQuest has owned the domain name <Hayward.com> that the URL www.Hayward.com did not resolve to an active website.

79. WebQuest's use of the domain name <wwwHayward.com> or the domain name <Hayward.com> for the URL of a website with a Predominant Swimming-Pool-Product Main Page was not a *bona fide* noncommercial or fair use.

80. WebQuest's use of the domain name <wwwHayward.com> or the domain name <Hayward.com> for the URL of a website with a Non-Predominant Swimming-Pool-Product Main Page was not a *bona fide* noncommercial or fair use.

81. When WebQuest refrained from incorporating either the domain name <wwwHayward.com> or the domain name <Hayward.com> in a URL for an active website, it did not otherwise employ either domain name in a *bona fide* noncommercial or fair use.

/ / /

/ / /

11

82.     To the contrary, WebQuest's use of the domain names <wwwHayward.com> and <Hayward.com> was intend to generate and in fact generated PPC revenue for WebQuest.

83.     WebQuest also attempted to generate revenue from the domain name <Hayward.com> by offering this domain name for sale at a public auction.  On or about October 29, 2009, WebQuest initiated an auction for the domain name <Hayward.com> with an opening minimum bid of $100,000.  A copy of the notice for this auction is attached as **Exhibit L**.

84.     WebQuest's use of the domain name <wwwHayward.com> or the domain name <Hayward.com> for the URL of a website with a Predominant Swimming-Pool-Product Main Page was intended to divert consumers from a website controlled by Hayward to a website that could harm the goodwill represented by the HAYWARD® mark.

85.     WebQuest's use of the domain name <wwwHayward.com> or the domain name <Hayward.com> for the URL of a website with a Non-Predominant Swimming-Pool-Product Main Page was intended to divert consumers from a website controlled by Hayward to a website that could harm the goodwill represented by the HAYWARD® mark.

86.     Hayward never authorized or consented to WebQuest's use either of the domain name <wwwHayward.com> or of the domain name <Hayward.com>.

**Actual Confusion as to the Source of the Website www.Hayward.com**

87.     WebQuest has created actual confusion and deception among professionals in the swimming pool industry as to the source, sponsorship, affiliation and endorsement of the website www.hayward.com with Hayward and the HAYWARD® mark.

88.     Oceanic Pool Construction, a Florida company that constructs, maintains and renovates residential swimming pools, mistakenly identifies on its website that the

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

website www.hayward.com is the website for Hayward.  Attached as **Exhibit M** is a copy of  the relevant page from the website www.oceanicpoolservice.com.

89.     Carlton Pools, a Pennsylvania company that sells, constructs, services and renovates residential swimming pools, mistakenly identifies on its website that the website www.hayward.com is the website for Hayward.  Attached as **Exhibit N** is a copy of the relevant page from the website www.carltonpools.com.

90.     Pool Specialist, a North Carolina company that builds residential swimming pools, mistakenly identifies on its website that the website www.hayward.com is the website for Hayward.  Attached as **Exhibit O** is a copy of the relevant page from the website www.pool-specialist.com.

91.     Advanced Watershapes, a Florida company that builds custom residential swimming pools, mistakenly identifies on its website that the website www.hayward.com is the website for Hayward.  Attached as **Exhibit P** is a copy of the relevant page from the website www.advanced-water-shapes-custom-pools.com.

92.     Indeed, the Monterey Coast chapter of the Independent Pool & Spa Service Association, a trade group for swimming pool service technicians, mistakenly identifies on its website that the website www.hayward.com is the website for Hayward.  Attached as **Exhibit Q** is a copy of  the relevant page from the website www.montereyipssa.com.

93.     WebQuest also has created actual confusion and deception among professionals in the swimming pool product industry as to the source, sponsorship, affiliation and endorsement of the website www.hayward.com with Hayward and the HAYWARD® mark.

94.     4yourpool.com, a New York company that sells swimming pool products and accessories online, including Hayward's swimming pool products, mistakenly identifies on its website that the website www.hayward.com is the website for Hayward.  Attached as **Exhibit R** is a copy of the relevant page from the website www.4yourpool.com.

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

95.    WebQuest also has created actual confusion and deception among individual consumers as to the source, sponsorship, affiliation and endorsement of the website www.hayward.com with Hayward and the HAYWARD® mark, causing them to mistakenly identify the website www.hayward.com as the website for Hayward. Attached as **Exhibit S** are representative examples of such consumer confusion.

96.    WebQuest's past and continued use of the domain names <wwwHayward.com> and <Hayward.com> has and likely will continue to create actual confusion and deception as to the source, sponsorship, affiliation and endorsement of the website www.hayward.com with Hayward and the HAYWARD® mark.

## **WebQuest's Pattern and Practice of Domain Name Infringement**

97.    WebQuest is a professional domain name speculator.

98.    WebQuest owns approximately 16,000 domain names.

99.    WebQuest has registered multiple domain names that are identical to or confusingly similar to federally registered trademarks owned by other companies.

100.    On October 30, 2009, WebQuest was the current registrant of the domain names <chicfila.com>, <cragslists.com>, <craighlist.org>, <craiglift.org>, <craigslistaustin.com>, <craigslistboston.org>, <craigslistlosangeles.org>, <craigslistnewyork.org>, <craigslistportland.com>, <craigslistsacramento.com>, <crailist.com>, <craistlist.org>, <fodders.com>, <magicgathering.com> and <menwharehouse.com>.

101.    The domain names <craigslistaustin.com>, <craigslistboston.org>, <craigslistlosangeles.org>, <craigslistnewyork.org>, <craigslistportland.com>, and <craigslistsacramento.com> incorporate in totality the federally registered trademark CRAIGSLIST.

102.    The domain names <cragslists.com>, <craighlist.org>, <craiglift.org>, <crailist.com>, and <craistlist.org> are confusingly similar to the federally registered trademark CRAIGSLIST.

103.   The domain name <chicfila.com> is confusingly similar to the federally registered trademark CHICK-FIL-A.

104.   The domain name <fodders.com> is confusingly similar to the federally registered trademark FODOR'S.

105.   The domain name <magicgathering.com> is confusingly similar to the federally registered trademark MAGIC THE GATHERING.

106.   The domain name <menwharehouse.com> is confusingly similar to the federally registered trademark MEN'S WEARHOUSE.

107.   WebQuest has never been the owner of a federally registered trademark for CRAIGSLIST, CHICK-FIL-A, FODOR'S, MAGIC THE GATHERING or MEN'S WEARHOUSE.

108.   Upon information and belief, WebQuest has never possessed any trademark rights in a trademark incorporating any of the terms "Craigslist," "Chick-Fil-A," "Fodor's," "Magic the Gathering," and "Men's Wearhouse."

109.   Upon information and belief, WebQuest has never possessed any trademark rights in a trademark incorporating a term confusingly similar to any of the terms "Craigslist," "Chick-Fil-A," "Fodor's," "Magic the Gathering," and "Men's Wearhouse."

### Demanding That WebQuest Cease and Desist

110.   In a letter dated August 1, 2006, Hayward demanded that WebQuest cease and desist from using the domain name <Hayward.com> and immediately transfer this domain name to Hayward.  A copy of the August 1, 2006 letter is attached as **Exhibit T**.

111.   WebQuest responded to the August 1, 2006 letter in a letter dated August 4, 2006 wherein it refused to comply with these demands and advised that it would aggressively defend against any adversarial action seeking the transfer of the domain name <Hayward.com> to Hayward.  A copy of the August 4, 2006 letter is attached as **Exhibit U**.

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

**The UDRP Arbitration Matter Before WIPO Concerning the Domain Names**

112.   On or about November 3, 2009, Hayward initiated the arbitration matter styled <u>Hayward Industries, Inc. v. WebQuest.com, Inc.</u>, Case No. D2009-1493, conducted under the UDRP before WIPO, in an effort to secure the transfer of the domain names <wwwHayward.com> and <Hayward.com> to Hayward.  A true and correct copy of Hayward's Complaint in this matter, without exhibits, is attached hereto as **Exhibit V**.

113.   In its Complaint, Hayward alleged that WebQuest's registration and use of the domain names <wwwHayward.com> and <Hayward.com> violated the UDRP because (i) these domain names are identical or confusingly similar to Hayward's HAYWARD® mark; (ii) WebQuest has no rights or legitimate interests in these domain names; and (iii) WebQuest's registration and use of these domain name was in bad faith.

114.   WebQuest submitted a response to this Complaint on or about December 8, 2009.  A true and correct copy of WebQuest's response in this matter, without exhibits, is attached hereto as **Exhibit W**.

115.   On January 14, 2010, WIPO appointed a three person arbitration panel to adjudicate Hayward's Complaint (the "Panel").

116.   The Panel issued a decision in favor of Hayward on January 27, 2010, ordering the transfer of the domain names <wwwHayward.com> and <Hayward.com> to Hayward.  A true and correct copy of  the Panel decision is attached hereto as **Exhibit X**.

117.   First, the Panel found that Hayward had rights in its HAYWARD® mark:

> Based upon the trademark registrations cited by Complainant, it is obvious that Complainant has rights in the HAYWARD Trademark, and Respondent does not dispute the validity of the HAYWARD Trademark.

/ / /

/ / /

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

118.   The Panel further found that each of the domain names

<wwwHayward.com> and <Hayward.com> are identical and/or confusingly similar to

Hayward's HAYWARD® mark,  and that WebQuest did not dispute this issue:

> It is self-evident that the disputed domain name <hayward.com> is identical to the HAYWARD Trademark. See, e.g., Regan Campbell Ward-McCann v. Site Services International, Richard Sorensen, WIPO Case No. D2008-0386 (finding the domain name <rcw.com> identical to the trademark RCW "without the need for elaboration"). As for the disputed domain name <wwwhayward.com>, Complainant correctly points out that many panels have disregarded the inclusion of the characters "www" in a second-level domain given that these characters are typically used in a third-level domain to present a website's uniform resource locator. See, e.g., Hoffmann-La Roche Inc. v. Andrew Miller, WIPO Case No. D2008-1345 (finding the domain name <wwwxenical.org>, inter alia, confusingly similar to the trademark XENICAL). Finally, it is significant that Respondent does not dispute that either of the disputed domain names is identical or confusingly similar to the HAYWARD Trademark.

119.   The Panel further found that the websites corresponding to the domain

names <wwwHayward.com> and <Hayward.com> contained links to websites selling

goods of Hayward's competitors:

> Importantly, Complainant has shown that the websites associated with the disputed domain names in this case contain (or contained) pages with links offering or leading to pages with links offering goods or services that are competitive with the goods and services offered by Complainant under its HAYWARD Trademark.

120.   The Panel further found that, contrary to WebQuest's contention, the

domain names <wwwHayward.com> and <Hayward.com> were not being used

exclusively in a manner that exploited any geographic meaning:

> Clearly, the disputed domain names are therefore not being used solely in connection with their geographic meaning. "It is by now well established that PPC parking pages built around a trademark (as contrasted with PPC pages built around a dictionary word and used only in connection with the generic or merely descriptive meaning of the word) do not constitute a bona fide offering of goods or services pursuant to paragraph 4(c)(i) of the Policy, nor do they constitute a legitimate non-commercial or fair use pursuant to paragraph 4(c)(iii)." Ustream.TV, Inc. v. Vertical Axis, Inc, WIPO Case No. D2008-0598.   See also mVisible

17

Technologies, Inc. v. Navigation Catalyst Systems, Inc., WIPO Case No. D2007-1141 ("Respondent's domain names appear to be used for their trademark value and not for any descriptive value in the names.").

121.    The Panel further found that WebQuest failed to establish that it had used, or made any preparations to use, either the domain name <wwwHayward.com> or the domain name <Hayward.com> in connection with websites devoted to the city of Hayward, California, but, rather that it had improperly profited off the valuable goodwill in Hayward's HAYWARD® mark:

> Respondent has not shown that it has used, or made demonstrable preparations to use, either of the disputed domain names in connection with websites about the city of Hayward, despite a statement from Respondent's counsel more than three years ago indicating that <hayward.com> was a part of Respondent's portfolio of domain names that correspond to geographical names in the same region of California.   While Respondent was not obligated to immediately use either of the disputed domain names in connection with geographic-specific websites, Respondent should not have parked the domain name in the interim with a page that improperly profited off of the value of Complainant's trademark with PPC revenue. Moreover, that Respondent has a portfolio of other geographic-specific websites and has not used either of the disputed domain names in a similar manner for a reasonable period of time renders Respondent's arguments unbelievable with respect to the disputed domain names.

122.    The Panel further found that the fact that the websites associated with the domain names <wwwHayward.com> and <Hayward.com> lead to Internet sites that contain links to Hayward's competitors is indicative of WebQuest's bad faith:

> Nevertheless, decisions under the Policy frequently have found bad faith where a Respondent has used a domain name in connection with a PPC site that contains or leads to pages that contain links to a complainant's competitors. See, e.g., Wal-Mart Stores, Inc. v. Whois Privacy Inc., WIPO Case No. D2005-0850 ("In some cases, particularly where the links on such a page are not competitive with or disruptive to a relevant trademark owner, or confusing to visitors, such activity may not violate the Policy. However, where, as here, the links are apparently to competitive websites, especially with no indication that the links are not sponsored by or affiliated with the relevant trademark owner, then such activity indicates bad faith under the Policy.").

---

18

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

123.   The Panel further found that WebQuest bears the entire blame for using the websites associated with the domain names <wwwHayward.com> and <Hayward.com> in a manner that infringed the HAYWARD® mark:

> Respondent bears complete responsibility for how the disputed domain names were used and could have taken, but failed to take, steps to ensure that they were not used in connection with goods or services competitive with those offered under the HAYWARD Trademark. See, e.g., Mobile Communication Service Inc. v. WebReg, RN, WIPO Case No. D2005-1304.

124.   The Panel further found that a simple Internet search for the term "Hayward" by WebQuest clearly would have revealed Hayward's rights to the HAYWARD® mark:

> Notably, the Panel has independently observed that the most prominent organic search result for "hayward" leads to a website for Complainant (at www.haywardnet.com), so, as in *Mobile Communication Service*, "even a cursory search [by Respondent] on search engines like Yahoo! and Google would have shown that [this word] is a trademark."

125.   The Panel further found that WebQuest's conduct with regard to the domain name <Hayward.com> suggested that WebQuest had purchased this domain name with the intent merely to sell it in the future to the highest bidder:

> Finally, the Panel finds it informative – though not decisive – that, according to documents in the record, Respondent purchased the domain name <hayward.com> for USD$20,000 and was attempting to sell it for at least USD$100,000. These figures would seem to indicate that Respondent saw some value in this domain name for reasons other than its existence as the name of the city of Hayward, California – with a population of only about 150,000 people, according to the city's website at http://user.govoutreach.com/hayward/faq.php?cid=10774 – and for purposes other than as a PPC parking page (which, in the normal course, would not be expected to earn a return to justify such a rich investment).

126.   Finally, the Panel found that Hayward had met its burden of demonstrating that WebQuest had registered and used the domain names <wwwHayward.com> and <Hayward.com> in bad faith.

127.   The Panel decision is entitled to deference on the merits.

# FIRST CLAIM FOR RELIEF

## Cybersquatting

128. Hayward incorporates by reference the allegations in paragraphs 1-127 as if fully set forth herein at length.

129. WebQuest's actions constitute cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

130. WebQuest's acts greatly and irreparably injure Hayward and will continue to so injure Hayward unless restrained by this Court; wherefore, Hayward is without an adequate remedy at law.

# SECOND CLAIM FOR RELIEF

## Trademark Infringement

131. Hayward incorporates by reference the allegations in paragraphs 1-130 as if fully set forth herein at length.

132. WebQuest's acts have caused or are likely to cause confusion, mistake, or deception as to the source or origin, sponsorship, or approval of WebQuest or its services, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that WebQuest is associated with or related to Hayward or is authorized by Hayward to sell swimming pool products under the HAYWARD® mark.

133. WebQuest's acts injure Hayward's image and reputation with consumers in this judicial district and elsewhere in the United States by creating confusion about, and dissatisfaction with, Hayward.

134. WebQuest's deliberate use of the HAYWARD® mark in the domain names <wwwHayward.com> and <Hayward.com> constitutes trademark infringement of the HAYWARD® mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and the common law of various states, including California.

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

135.   WebQuest's acts greatly and irreparably damage Hayward and will continue to so damage Hayward unless restrained by this Court; wherefore, Hayward is without adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### Unfair Competition

136.   Hayward incorporates by reference the allegations in paragraphs 1-135 as if fully set forth herein at length.

137.   WebQuest's acts constitute unfair competition with Hayward in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the California Deceptive and Unfair Trade Practices Act, Cal. Bus. & Prof. Code § 17000-17101, and the common law of various states, including California.

138.   WebQuest's acts greatly and irreparably damage Hayward and will continue to so damage Hayward unless restrained by this Court; wherefore, Hayward is without adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### Trademark Dilution

139.   Hayward incorporates by reference the allegations in paragraphs 1-138 as if fully set forth herein at length.

140.   WebQuest's acts are likely to tarnish Hayward's valuable business reputation and goodwill and are likely to blur the distinctiveness of the famous and distinctive HAYWARD® mark.

141.   WebQuest's acts of dilution and tarnishment are intentional and willful.

142.   WebQuest's acts constitute dilution and tarnishment of Hayward's famous HAYWARD® mark in violation of 43(a) of the Lanham Act, 15 U.S.C. § 1125(c), and California's Anti-Dilution Statute, Cal. Bus. & Prof. Code § 14247.

143.   WebQuest's acts greatly and irreparably damage Hayward and will continue to so damage Hayward unless restrained by this Court; wherefore, Hayward is without adequate remedy at law.

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

1

2          **WHEREFORE**, Hayward prays:

3          1.      That WebQuest, and all persons acting in concert or participating with

4    WebQuest, including but not limited to Chad Wright, be preliminarily and permanently

5    enjoined from:

6                  a.      registering or maintaining any registration of the domain names

7    <wwwHayward.com> or <Hayward.com>, or any other names, words, designations, or

8    symbols consisting of, incorporating in whole or part, or otherwise confusingly similar

9    to the HAYWARD® mark, or any other trade names, trademarks, or service marks of

10   Hayward.

11                 b.      using the domain names <wwwHayward.com> or <Hayward.com>

12   or any other names, words, designations, or symbols consisting of, incorporating in

13   whole or part, or otherwise confusingly similar to the HAYWARD® mark or ay other

14   trade names, trademarks, or service marks of Hayward.

15                 c.      using any names, words, designations, or symbols consisting or,

16   incorporating in whole or part, or otherwise similar to the HAYWARD® mark or any

17   other Hayward trademark anywhere on any website or on the websites controlled by

18   WebQuest.

19                 d.      using any names, words, designations, or symbols consisting or,

20   incorporating in whole or part, or otherwise similar to the HAYWARD® mark or any

21   other Hayward trademark in any buried code, metatags, search terms, keywords, key

22   terms, hit generating pages, or any other device used, intended, or likely to cause any

23   website or websites controlled by WebQuest to be listed by any Internet search engines

24   in response to any searches that include any terms identical with or confusingly similar

25   to the HAYWARD® mark or any other Hayward trademarks.

26                 e.      using any names, words, designations, or symbols consisting of,

27   incorporating in whole or part, or otherwise similar to the HAYWARD® mark or any

28

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

other Hayward trademark in any e-mail or other marketing solicitations sent to consumers;

f.      otherwise infringing Hayward's trademarks;

g.      making any description or representation stating or implying that the domain names <wwwHayward.com> or <Hayward.com> or any websites controlled by WebQuest are in any way affiliated, associated, authorized, sponsored, endorsed or otherwise connected with Hayward; and

h.      any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of the domain names <wwwHayward.com> or <Hayward.com>, any other domain names registered by WebQuest, or any websites controlled by WebQuest with Hayward.

2.      That WebQuest be ordered to disclose to the Court and Hayward all other domain name registrations currently or previously owned directly or indirectly by WebQuest, or by entities in which WebQuest has or had a financial interest, to permit the Court and Hayward to consider whether any such other registrations should be subject to relief in this matter.

3.      That WebQuest, and all persons acting in concert or participating with WebQuest, be ordered to transfer to Hayward the domain names <wwwHayward.com> and <Hayward.com> and any other domain names in WebQuest's possession, custody or control as may be determined by the Court as appropriate herein for relief.  15 U.S.C. § 1125(d)(1)(C).

4.      That WebQuest be ordered to pay Hayward statutory damages in the amount of $100,000 per infringing domain name, for a total amount of $200,000.  15 U.S.C. § 1117(d).

5.      That WebQuest be ordered to provide an accounting of all revenue generated from its bad faith use of the domain names <wwwHayward.com> and <Hayward.com> and to pay Hayward all profits realized by WebQuest by reason of its unlawful acts as set forth in this Counterclaimant.  15 U.S.C. § 1117(a).

23

6.     That WebQuest be ordered to pay Hayward all damages suffered by Hayward by reason of WebQuest's trademark infringement as set forth in this Countercomplaint.  15 U.S.C. § 1117(a).

7.     That the Court award Hayward three times the damages suffered by reason of the intentional, unlawful acts of WebQuest as set forth in this Countercomplaint.  15 U.S.C. § 1117(a).

8.     That WebQuest be required to file with the Court and serve on the undersigned counsel for Hayward, within thirty (30) days after the entry of judgment, a written report under oath setting forth in detail the manner in which WebQuest has complied with the injunction ordered by this Court.  15 U.S.C. § 1116.

9.     That WebQuest be ordered to pay Hayward the costs of this action and its reasonable attorneys' fees.  15 U.S.C. § 1117(a).

10.     That Hayward shall have other such relief as this Court may deem just and proper.

## JURY DEMAND

Hayward hereby demands a trial by jury on all issues and claims raised in the Countercomplaint that are triable by jury.


Respectfully submitted on April 26, 2010,


HERNANDEZ, SCHAEDEL & ASSOCIATES, LLP


By:   /s/ Don A. Hernandez
        Don A. Hernandez
        Attorneys for Defendant
        HAYWARD INDUSTRIES, INC.

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**

1

## CERTIFICATE OF SERVICE

2

    The undersigned hereby certifies that the foregoing was served by electronically

3

filing the same with the Court's CM/ECF system, which caused a Notice of Electronic

4

Filing to be emailed to the following:

5

                Mike Rodenbaugh, Esq.

6

                RODENBAUGH LAW
                548 Market Street

7

                San Francisco, CA 97104

8

                Erin Dennis Vivion, Esq.

9

                RODENBAUGH LAW

10

                7740 North Fresno Street
                Suite 104

11

                Fresno, CA 93720

12

                Brett E. Lewis, Esq.

13

                LEWIS & HAND, LLP

14

                45 Main Street
                Suite 608

15

                Brooklyn, New York 11201

16

17

    This the 26th day of April, 2010.

18

19

                            /s/   Don A. Hernandez

20

                                Don A. Hernandez

21

22

23

24

25

26

27

28

**HAYWARD INDUSTRIES INC.'S COUNTERCLAIMS**