UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WEBQUEST.COM, INC.,**<br><br>                    **Plaintiff,**<br><br>   **v.**<br><br>**HAYWARD INDUSTRIES, INC.,**<br><br>                    **Defendant.** | **1:10-cv-00306-OWW-JLT**<br><br>**MEMORANDUM DECISION REGARDING MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 25); MOTION TO DISMISS COUNTERCLAIM (Doc. 30); AND MOTION FOR SANCTIONS (Doc. 29)** |

## I. <u>INTRODUCTION</u>.

WebQuest.com, Inc., ("Plaintiff") proceeds with this action for declaratory relief against Hayward Industries, Inc. ("Defendant") arising out of a domain name dispute.  On April 26, 2010, Defendant filed a counterclaim against Plaintiff. (Doc. 10).

Defendant filed a motion for judgment on the pleadings on June 29, 2010.  (Doc. 20).  Plaintiff filed opposition to Defendant's motion for judgment on August 30, 2010.  (Doc. 25).  On August 31, 2010, Plaintiff filed a motion for sanctions in connection with Defendants motion for judgment on the pleadings.  (Doc. 29). Plaintiff also filed a motion to dismiss Defendant's counterclaim. (Doc. 30).

Defendant filed opposition to Plaintiff's motion to dismiss and motion for sanctions on October 12, 2010.  (Doc. 35). Defendant filed a reply to Plaintiff's opposition to the motion for

**1**

1   judgment on the pleadings on October 12, 2010.  (Doc. 36).

2       On October 15, 2010, Plaintiff filed a reply to Defendant's

3   opposition to the motion to dismiss and a reply to Defendant's

4   opposition to the motion for sanctions.  (Docs. 41, 42).

5                    **II.  FACTUAL BACKGROUND**.

6       Plaintiff is a domain name investment company with a portfolio

7   of thousands of domain names.  On or about July 31, 2006, Plaintiff

8   purchased the domain name "Hayward.com" from Hayward & Associates,

9   Inc., a Georgia-based IT company.  Plaintiff had previously

10  registered the "wwwHayward.com" domain name on August 14, 2004.

11  Plaintiff alleges that at the time that Plaintiff registered the

12  Hayward domain names ("Domain Names"), it had never heard of

13  Defendant, Hayward Industries.  Plaintiff states it did not

14  register the Domain Names with the intent to sell them to Hayward

15  Industries, and Plaintiff never offered to sell the Domain Names to

16  Hayward Industries.  Plaintiff alleges it obtained the

17  "Hayward.com" domain name because of Hayward's geographic

18  significance as a city in the Bay Area of Northern California.

19  After registering the Domain Names, Plaintiff used them in

20  connection with pay-per-click advertising.  A domain name

21  monetization company, Domain Sponsor, supplied the content for the

22  Hayward Sites.

23      Defendant is a manufacturer and seller of pool equipment and

24  related supplies.  Defendant has been the owner of the trademark

25  HAYWARD since February 8, 1977.  Hayward has registered numerous

26  domain names incorporating the HAYWARD mark, such as

27  "haywardnet.com" and "haywardpoolproducts.com."  Hayward uses the

28  domain name "haywardnet.com" for the uniform resource locator

**2**

("URL") of its primary company website devoted to advertising and promoting the swimming pool controls, filters, heaters, pumps, valves, automatic pool cleaners, and related products that the company manufactures and sells.

Immediately after Plaintiff acquired "Hayward.com" on July 31, 2006, Defendant sent Plaintiff a cease and desist letter, dated August 1, 2006, accusing Plaintiff of willful infringement and dilution of Hayward's trademarks, and demanding that Plaintiff transfer "Hayward.com" to Defendant.  By letter dated August 4, 2006, Plaintiff denied the allegations. In that letter, Plaintiff informed Hayward Industries that it was the registrant of a portfolio of Northern California geo domain names, including "Hayward.com", "CastroValley.com", and "Pleasanton.com."  From August 2006 to November 3, 2009, Plaintiff received no correspondence from Defendant.

Defendant filed a Complaint with the World Intellectual Property Organization ("WIPO") on or about November 3, 2009. Proceedings commenced on November 18, 2009, and a decision was issued on January 27, 2010 ordering Plaintiff to transfer the Domain Names to Defendant.

### III. **DISCUSSION**.

**A. Plaintiff's Motion to Dismiss Defendant's Counter-Claims**

Plaintiff seeks dismissal of Defendant's counter-claims on the grounds that Defendant violated Rule 8 of the Federal Rules of Civil Procedure by attaching over one-hundred pages of exhibits to its pleading.  Alternatively, Plaintiff moves to strike the exhibits attached to Defendants' counter claim pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

**3**

A district court has discretion to dismiss a claim due to a party's excessive attachment of unnecessary exhibits. *See, e.g., Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (noting that district court did not abuse discretion in dismissing complaint that included over 70 pages of exhibits). Here, because the voluminous exhibits attached to Defendant's counter-claim do not render the claim confusing or otherwise violative of Rule 8, dismissal is not warranted. Further, Plaintiff was not prejudiced by Defendant's attachment of the exhibits, as they have no evidentiary value. Plaintiff's motion to dismiss Defendant's counter-claim is DENIED.

A district court also has discretion to strike any immaterial or impertinent matter from a pleading. Fed. R. Civ. P. 12(f). Although documentary evidence may be incorporated into a pleading pursuant to Rule 10 of the Federal Rules of Civil Procedure, exhibits containing largely evidentiary material typically do not fall within the purview of Rule 10. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Save for Exhibit A, all of the exhibits Defendant attached to its counter-claim constitute unnecessary evidentiary materials.[1] *See id.* The documents are not authenticated. Plaintiff's motion to strike is GRANTED.

**B. Defendant's Motion for Judgment on the Pleadings**

Defendant contends it is entitled to judgment on the pleadings with respect to its counter-claim under 15 U.S.C. § 1125(d). In order to prevail on a claim under section 1125(d), Defendant must

---

[1] Although Plaintiff's motion to strike is untimely, the court has discretion to strike these materials *sua sponte*. Fed. R. Civ. P. 12.

**4**

establish that (1) Defendant is the holder of a distinctive mark that is entitled to protection; (2) the domain names registered by Plaintiff are identical or confusingly similar to Defendant's mark; (3) Plaintiff registered the domain names with a bad faith intent to profit from them. *See, e.g., Lahoti v. VeriCheck, Inc.,* 586 F.3d 1190, 1197 (9th Cir. 2009). Because whether Plaintiff acted with a bad faith intent to profit from Defendant's mark is a factual question, judgment on the pleadings is typically inappropriate.

Section 1125(d)(1)(B)(i) sets forth nine non-exclusive criteria a court may consider in assessing whether a party acted in bad faith. "The first four factors are those that militate against a finding of bad faith by providing some reasonable basis for why a defendant might have registered the domain name of another mark holder." *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004). A court may consider:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name

15 U.S.C. § 1125(d)(1)(B)(i). Defendant contends that each of these factors weighs in favor of finding Plaintiff acted in bad faith, because Plaintiff has no trademark or other intellectual property rights in the domain name, has never been known as "Hayward," had no prior use of the domain name in connection with

**5**

1  a bona fide offering of goods or services, and never developed the

2  website beyond placing pay-per-click advertising links on the site.

3      Defendant also contends that the fifth, sixth, eighth, and

4  ninth factors listed in section 1125(d)(1)(B)(i) also support a

5  finding of bad faith.  The fifth factor concerns a persons "intent

6  to divert customers from the mark owner's online location to a site

7  accessible under the domain name."  The pleadings do not establish

8  that Plaintiff "intended" to divert customers from Defendant's

9  website; to the contrary, the complaint alleges that Plaintiff had

10 never heard of Defendant at the time it registered the Domain

11 Names.[2]

12     The sixth factor set forth in section 1125(d)(2)(B)(i) states

13 that courts may consider:

14         the person's offer to transfer, sell, or otherwise assign
           the domain name to the mark owner or any third party for
15         financial gain without having used, or having an intent
           to use, the domain name in the bona fide offering of any
16         goods or services, or the person's prior conduct
           indicating a pattern of such conduct;
17

18 15 U.S.C. § 1125(d)(1)(B)(i).  Defendant correctly notes that

19 Plaintiff's complaint alleges that it offered to sell the Domain

20 Names at a public auction.

21     The eighth factor under 1125(d)(1)(B)(i) provides that

22         the person's registration or acquisition of multiple
           domain names which the person knows are identical or
23         confusingly similar to marks of others that are
           distinctive at the time of registration of such domain
24         names, or dilutive of famous marks of others that are

25 _____

26      [2] Defendant's attempt to rely on exhibits to the counter-claim to establish
   that Plaintiff's website has led to confusion demonstrates the impropriety of
27 deciding this issue at the pleading stage. Likelihood of confusion is a factual
   issue.  *Green v. Fornario*, 486 F.3d 100, 106 (3rd Cir. 2007).
28

**6**

1    famous at the time of registration of such domain names,
     without regard to the goods or services of the parties

2    may evince bad faith. *Id.* This factor is of no help to Defendant,

3    as Plaintiff's complaint alleges that it had never heard of

4    Defendant at the time it registered the Domain Names.

5        Finally, the ninth factor concerns "the extent to which the

6    mark incorporated in the person's domain name registration is or is

7    not distinctive and famous within the meaning of [section

8    1125(c)]." *Id.* Defendant argues that because it holds a trademark

9    for "HAYWARD," the mark is presumed distinctive and thus that

10   Plaintiff's use of the mark within the Domain Names evinces bad

11   faith. *See Lahoti*, 586 F.3d at 1199 ("Federal trademark

12   registration of a particular mark supports the distinctiveness of

13   that mark, because the PTO should not otherwise give it

14   protection"). However, as *Lahoti* makes clear, registration alone

15   is not always sufficient to establish distinctiveness. *See id.*

16   ("Registration alone *may* be sufficient in an *appropriate case* to

17   satisfy a determination of distinctiveness) (emphasis added).

18   Further, Defendant does not contend, and the pleadings to not

19   establish, that HAYWARD is "famous" within the meaning of section

20   1125(c).

21       Although the parties' pleadings assert that several of the

22   factors listed in section 1125(d)(2)(B)(i) support a finding that

23   Plaintiff acted in bad faith, mechanistic application of the

24   criteria set forth in section 1125 is neither required nor

25   appropriate in a case in which a party's intent is subject to

26   dispute. As the Fourth Circuit Court of Appeal explained in *Lucas

27   Nursery*,

28

**7**

> The role of the reviewing court is not simply to add factors and place them in particular categories, without making some sense of what motivates the conduct at issue. The factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit.

359 F.2d at 811.  Bad faith under section 1125(d) is rarely discernible directly and typically must be inferred from pertinent facts and circumstances.  *See Audi AG v. D'Amato*, 469 F.3d 534 549 (6th Cir. 2006).  Where it is unclear how well-recognized a mark is, discovery is important in order to allow factual development of the pertinent facts and circumstances relevant to the issue of an entity's bad faith.  *See Green,* 486 F.3d at 107.

Here, Plaintiff's motivation for registering the Domain Names is subject to a factual dispute.  Whether or not Defendant acted with bad faith intent within the meaning of section 1125(d) presents a question of fact that is not resolvable as a matter of law on a motion for judgment on the pleadings.  Plaintiff contends that it registered the Domain Names because of the geographic significance of Hayward as a city in the Bay Area of Northern California.  (Comp. at 7).  Accepting the allegations of the complaint as true, Plaintiff's activity does not as a matter of law establish the quintessential case of bad faith intent to profit contemplated by section 1125.  *See, e.g., Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*,  527 F.3d 1045, 1058 (10th Cir. 2008) ("quintessential example of a bad faith intent to profit is when a defendant purchases a domain name very similar to the trademark and then offers to sell the name to the trademark owner at an extortionate price...[or] intend[s] to profit by diverting customers from the website of the trademark owner to the

**8**

defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's"); *Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672, 680 (9th Cir. 2005) (same)*; Lucas Nursery*, 359 F.3d at 810 ("the crucial elements of bad faith to mean an 'intent to trade on the goodwill of another's mark'"); *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 779 (8th Cir. 2004) (noting significance of evidence establishing "bad faith intent to profit from [trademark holder's] mark"); *see also Savin Corp. v. Savin Group*, 391 F.3d 439, 460 (2nd Cir. 2005)(affirming finding of no bad faith in trademark action where evidence established defendant had no knowledge of trademark holder's existence at the time defendant adopted mark).  Defendant cites no authority for the proposition that bad faith may be found despite an entity's lack of knowledge of a trademark holder's existence.

**C. Plaintiff's Motion for Sanctions**

Plaintiff seeks sanctions against Defendant on the grounds that Defendant's motion for judgment on the pleadings violates Rule 11 of the Federal Rules of Civil Procedure.  Although Defendant's motion for judgment borders on the frivolous, it is not so devoid of merit that it violates Rule 11.  Plaintiff's motion for sanctions is DENIED.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Plaintiff's motion to dismiss Defendant's counterclaim is DENIED;

2) Plaintiff's motion to strike all exhibits from Defendant's counterclaim, with the exception of Exhibit A, is GRANTED;

**9**

3) Plaintiff's motion for sanctions is DENIED;

4) Defendant's motion for judgement on the pleadings is DENIED;

5) Defendant shall lodge a formal order consistent with this decision within five (5) days following electronic service of this decision by the clerk.  Plaintiff shall file an amended complaint within fifteen (15) days of the filing of the order. Defendant shall file a response within fifteen (15) days of receipt of the amended complaint.

IT IS SO ORDERED.

**Dated:   November 8, 2010            /s/ Oliver W. Wanger      **
                                      UNITED STATES DISTRICT JUDGE